IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| WAYLAND DEE KIRKLAND, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 11-2347-JAR** |
| DIANE ZADRA DRAKE, | ) | |
| JESSICA SLOCUM, KATIE POPE, | ) | |
| DEB POPE, DONNA JOHNSON, | ) | |
| DREW WHITMORE, | ) | |
| ROBIN BURGESS, | ) | |
| JENNIFER STANLEY, | ) | |
| ZACH CYPERS, and | ) | |
| KEVIN KASTLER, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Wayland Dee Kirkland, proceeding *pro se* and *in forma pauperis*, brings this

action against Defendants alleging a conspiracy to violate his civil rights under 42 U.S.C. § 1983

by depriving him of funds received as part of a grant from Mental Health America of the

Heartland ("MHAH").[1]  Defendant Diane Drake is the Director of Elizabeth Layton Center

("ELC") and Jessica Slocum, Donna Johnson, Drew Whitmore, Robin Burgess, Jennifer Stanley,

Zach Cypers and Kevin Kastler are present and former employees of ELC; Deb Pope and Katie

Pope are present and former employees of MHAH, respectively.  This matter is before the Court

on Defendants Drake, Stanley, Burgess, Slocum, Kastler, Johnson and Cyphers' (collectively

"ELC Defendants") Motion to Dismiss (Doc. 51) for failure to state a claim under Fed. R. Civ. P.

---

[1]This case has been consolidated for discovery and pretrial with the related case, *Kirkland v. Jones, et al.*, No. 11-2504-EFM.

12(b)(6); and Defendants Deb Pope and Katie Pope's Motion to Dismiss for failure to obtain service of process (Doc. 55). For the reasons explained in detail below, the Court denies ELC Defendants' motion and grants the Pope Defendants' motion, without prejudice.

**I.      Procedural and Factual Background**

The following facts are taken from Plaintiff's Complaint.  For the purposes of this motion, the Court assumes the truth of these facts.  Plaintiff received a HUD grant for housing from MHAH on April 28, 2010.  Included in the grant were "start-up funds" to purchase household necessities with assistance from a case manager at ELC, "the local mental health agency."  Plaintiff's caseworker at ELC, Jessica Slocum, used the start-up funds to purchase a washer, dryer and refrigerator.  Plaintiff alleges the appliances were defective and when he complained to Slocum, she told him he could use the start-up funds to repair or replace the appliances.  Plaintiff told Slocum that was unacceptable and that ELC should have to bear the cost.  When he continued to complain, Slocum would not allow Plaintiff to spend any of the start-up funds or tell him how much money he had left from the original funds.

During an in-home visit by MHAH co-coordinators Deb Pope and Katie Pope in June 2010, Plaintiff was told by Katie Pope that he must save his remaining start-up funds for emergencies.  Plaintiff responded that this was ridiculous and that he expected to spend the funds as soon as possible because the issue was stressing him out.  Pope responded that all of MHAH's clients have money remaining in their start-up funds.

Plaintiff subsequently noticed a change in attitude and service by Slocum, who did not show up or call for a July 2010 lung cancer appointment that she had set up for Plaintiff.  In mid-July 2010, Plaintiff placed a phone call to the ELC's Quality Assurance Coordinator, Donna

Johnson, to complain about his grant, but Johnson was "useless."

On about July 26, 2010, Plaintiff went to the ELC to complain about the start-up funds and Colt Coffin, an ELC staffer who Plaintiff believed was engaged in an inappropriate relationship with Plaintiff's girlfriend, Cheryl Blake, who is also a client of ELC.  Instead of addressing his concerns, Plaintiff alleges he was confronted by ELC psychologist Drew Whitmore and ELC social worker Robin Burgess; instead of addressing his concerns, Whitmore and Burgess conspired to commit Plaintiff to the Osawatomie State Hospital.

Upon his discharge from the State Hospital on August 2, 2010, Plaintiff phoned ELC Executive Director Diane Drake to ask her to investigate his start-up funds and Defendant Coffin and to request a new case manager.  Drake was rude but said she would "look into it."  Plaintiff received a letter dated August 5, 2010, from ELC Assistant Director Jennifer Stanley, informing him his new case manager was Candi Dials.  Dials was nice to Plaintiff and helped him spend some of the start-up funds at Walmart.  In mid-September 2010, Dials left a note on Plaintiff's door stating that she wanted him to use the funds to repair the washer and dryer.  Dials also said that she "got her ass jumped" for allowing Plaintiff to spend some of his funds.

In November 2010, Plaintiff was assigned another case manager, Zach Cyphers.  When Plaintiff asked Cyphers to help him spend his start-up funds, Cyphers told Plaintiff that Stanley said that Plaintiff could only spend "so much per year" of his funds.  That same month, Plaintiff received a letter from Deb Pope at MHAH stating that start-up funds must be used within forty-five (45) days of receipt of the grant.

Plaintiff received a letter from Johnson dated December 1, 2010, which did not address his concerns regarding the start-up funds.  In his response to Johnson dated December 8, 2010,

Plaintiff asked for a response in writing or voice recording.  Plaintiff states that he had not received a response to his November complaint from MHAH, ECL or the Disability Rights Center of Kansas, but that HUD had responded.

Plaintiff states that the start-up funds issue brought him and Cyphers into dispute many times.  Cyphers told Plaintiff he could not help him with his complaints about ELC because he would get fired.  Cyphers "constantly" missed appointments without calling Plaintiff, including his lung cancer appointments.

Plaintiff received a letter dated May 12, 2011, from Disability Rights Center of Kansas, which included some documents and receipts from MHAH and ELC.  Plaintiff contends that missing from the documents was his November 2010 complaint to MHAH and ELC, as well as the receipts from Walmart for purchases he made with Dials out of his start-up funds.

On June 6, 2011, Plaintiff spoke on the telephone with Stanley.  He told her that he had gone to the emergency room the previous month and had an appointment that day that he had to cancel because Cyphers had not been in contact with him for over a month.  Stanley said she told Cyphers to stay away from Plaintiff because Plaintiff was upset about his start-up funds, then informed Plaintiff that he had been assigned a new case worker, Kevin Kastler.  Stanley assured Plaintiff that she would call Kastler that day and that Plaintiff would receive a call from Kastler that day.  When Kastler did not call, Plaintiff went to his office on June 13, 2011, and Kastler set up an appointment to see Plaintiff the next day.  Plaintiff told Kastler that he was going to borrow money for a voice recorder to tape their appointment.  Kastler told Plaintiff he did not care because he had "nothing to hide."  Plaintiff borrowed $50 from his nephew and bought the recorder.  When he began taping their meeting, however, Kastler became angry and ordered

Plaintiff to shut off the recorder.

## II.    Discussion

Plaintiff alleges that Defendants violated his rights under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.  Plaintiff contends that Defendants at ELC and MHAH conspired to defraud grant recipients with severe mental illnesses out of their start-up funds intended to furnish the recipients' homes.  Plaintiff contends that all Defendants acted under the color of state law and are sued in both their official and individual capacities. Defendants Deb and Katie Pope seek dismissal of the claims against them due to Plaintiff's failure to obtain service of process within the time allowed by the Federal Rules of Civil Procedure.  ELC Defendants move to dismiss Plaintiff's claim against them for failure to state a claim upon which relief may be granted because they are not "persons acting under color of state law" as required by § 1983.  The Court discusses each in turn.

### A.    Rule 4

Fed. R. Civ. P. 4(m) states,

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

On December 19, 2011, Plaintiff was granted additional time to obtain service on Defendants Deb and Katie Pope within 45 days of the date of the Order, or February 2, 2012, and was further ordered to provide the Clerk's Office with the current location and address for Defendants or obtain summons from the Clerk's Office with the updated addresses and return for

service within twenty (20) days of the date of the Order.[2]  Deb Pope was served March 8, 2012, at MHAH, her place of employment; Katie Pope, who is no longer employed at MHAH, has not been served.  Plaintiff has not responded to Defendants' motion to dismiss or otherwise established good cause to explain why he failed to obtain service upon Defendants by February 2, 2012.  Accordingly, this action is dismissed, without prejudice, with respect to the above-named Defendants.

**B.**     **Rule 12(b)(6)**

Because Plaintiff proceeds *in forma pauperis*, the Court may dismiss the Complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant immune from such relief.[3]  A complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief."[4]  Under the "plausibility" standard that guides the court, a complaint must contain sufficient factual allegations to give fair notice to defendants of the grounds of the claim against them.[5]  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."[6]

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to

---

[2](Doc. 38).

[3]28 U.S.C. § 1915(e)(2)(B).

[4]Fed. R. Civ. P. 8(a)(2).

[5]*Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

[6]*Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)).

state a claim to relief that is plausible on its face."[7]   Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[8]   The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[9]   As the Supreme Court recently explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[10]   Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [11]

Because the plaintiff is a *pro se* litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[12]   However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[13]   The court need only accept as true the

---

[7]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[8]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[9]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247–48 (10th Cir. 2008).  "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[10]*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[11]*Id.*

[12]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[13]*Id.*

plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[14]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[15]

### 1.   Conspiracy

Plaintiff alleges that Defendants engaged in a conspiracy under 18 U.S.C. § 371.  While it appears that Plaintiff is attempting to allege state action based on a conspiracy theory, ELC Defendants are correct that as a criminal statute, § 371 does not convey a private cause of action.[16]  Thus, Plaintiff's conspiracy claim is dismissed.

### 2.   Section 1983

Pursuant to 42 U.S.C. section 1983, any person who "under color of . . .  [law] . . . subjects, or causes to be subjected, . . .  any [person] . . .  to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 was enacted to provide protections to those persons wronged by the misuse of governmental power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed.[17]  To state a claim for relief in a section 1983 action, a plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed

---

[14]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[15]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[16]*Rockefeller v. U.S. Court of Appeals Office for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 22 (D.D.C. 2003).

[17]*See Wilson v. Stock,* 52 F.3d 1547, 1552 (10th Cir. 1995).

8

under color of state law.[18]  "The only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it."[19]

Under certain circumstances, a private party may act under the color of state law for purposes of § 1983.[20]  "Taking a flexible approach to an inherently murky calculation," courts use four different tests to determine whether a private individual acted under the color of law: (1) the public function test; (2) the nexus test; (3) the joint action test; and (4) the symbiotic relationship test.[21]  Under the public function test, the "court determines whether a private entity has exercised 'powers traditionally exclusively reserved to the State.'"[22]  Under the nexus test, the court examines whether the nexus between the government and the challenged conduct is so close that the conduct may be fairly treated as that of the state itself.[23]  "That is, a state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[24]  Under the joint action test, state action exists if a private party

---

[18]*See Am. Mfr's Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999).

[19]*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (internal quotations and citations omitted).

[20]*Tool Box v. Ogden City Corp.*, 316 F.3d 1167, 1175 (10th Cir. 2003); *see also Gallagher*, 49 F.3d at 1447 (discussing these four tests).

[21]*Id.*

[22]*Tool Box*, 316 F.3d at 1176 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) (listing holding elections, performing necessary municipal functions, and running a nursing facility as powers that were traditionally exclusively reserved to the state)).

[23]*Id.*

[24]*Id.* (quotations omitted).

willfully participates in joint action with the state by acting in concert to effect a deprivation of constitutional rights.[25]  Last, under the symbiotic relationship test, a private party may be considered a state actor "if the state 'has so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.'"[26] This last test has been read narrowly, and requires more than "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions."[27]

The Supreme Court supplemented and clarified that these tests are entwined in the sense that all four "are, for all intents and purposes, tools for factual analysis that 'bear on the fairness of . . . an attribution [of state action].'"[28]  Under *Brentwood*, courts are to "apply the tests only so far as they force courts to zero in on the fact-intensive character of a state action determination."[29]

Here, Plaintiff's complaint describes ELC as a local mental health center that provides services, such as assisting mental health grant recipients to spend grant funds from agencies such as MHAH.  ELC Defendants argue that providing such services does not make an organization a state actor, citing *Dow v. Terramara, Inc.*[30]  In that case, a non-profit organization contracted

---

[25]*Id*. (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980))

[26]*Id*. (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).

[27]*Id*. (quotation omitted).

[28]*Brentwood Academy v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 296 (2001).

[29]*Id.*

[30]835 F. Supp. 1299, 1303 (D. Kan. 1993).

with three counties to provide facilities and services for adult mentally handicapped people.[31]

The court held that although the non-profit organization "performs a public function, it cannot be

said that providing services and housing to mentally handicapped adults has been 'traditionally

the *exclusive* prerogative of the State.'"[32]  Thus, the court held the non-profit organization in

*Dow* was not a state actor under the public function test.  The court further held that simply

because the organization in *Dow* was subject to extensive state regulation "does not make . . . the

defendants state actors unless the regulation compelled or influenced" the action that resulted in

the alleged violation of the plaintiff's rights.[33]  ELC Defendants argue that because they perform

similar functions to those in *Dow*, they likewise do not exercise powers traditionally and

exclusively reserved to the State and are thus not public actors.  Moreover, because Plaintiff does

not allege any facts suggesting that state regulations governing the ELC Defendants compelled

or influenced their actions in any way, and thus the public function test does not demonstrate

state action.

Judge Lungstrum addressed the issue of whether an entity similar to ELC was a state

actor for § 1983 liability purposes in *Rosewood Services, Inc. v. Sunflower Diversified Services,*

*Inc.,*[34] explaining that in 1995 the Kansas legislature enacted the Developmental Disabilities

Reform Act ("the DD Reform Act"), which provided that any community mental disability

facility would become the new community developmental disability organization ("CDDO") for

---

[31]*Id*. at 1303.

[32]*Id*. (emphasis in the original).

[33]*Id*.

[34]No. 02-2140-JWL. 2003 WL 22090897 (D. Kan. Sept. 8, 2003).

its existing service area and, by virtue of its designation as a CDDO, would be imbued with certain statutory authorities and responsibilities, including disbursing funds.[35]  In denying summary judgment, the court held that there was a material issue of fact regarding whether the non-profit organization and its director engaged in conduct that can fairly be attributed to the state and county governments because the organization administered components of the developmental disabilities program, which serves a public purpose, and SRS and county governments remained entwined in the organization's administration of that program.[36]  In so ruling, the court noted that although *Dow* involved a similar entity, that case was decided in 1993, before the DD Reform Act that created the CDDO structure was enacted.

Here, the allegations in Plaintiff's complaint and limited representations in the ELC Defendants' memorandum leave the Court little to work within the confines of a Rule 12(b)(6) motion.  Plaintiff states that ELC is a local mental health agency and describes functions similar to those discussed in *Dow* and *Rosewood*, including helping him with his "start up funds" that he received from a federal grant to purchase household items.  Although not compelling, Plaintiff's allegation of state action is plausible.  While the ELC Defendants categorically argue about whether they were acting under color of law, the parameters of their motion necessarily limit them to the pleadings.  Although Defendants ask the Court to take judicial notice that ELC is a not for profit corporation, that alone does little to address the entwinement concept in which the Court has been directed to "zero in" on the specific facts of a state action determination.  Specifically, ELC does not provide the Court with any information regarding whether it is a

---

[35]*Id*. at *1.

[36]*Id*. at *20 (citing *Brentwood*, 531 U.S. at 296).

12

CDDO or, for that matter, how its organization is structured or functions in providing mental health services to its clients.  Accordingly, the Court denies ELC Defendants' motion to dismiss, as the issue would be more appropriately resolved on summary judgment addressing the nature of ELC's organization and the facts specific to the color of law determination.

**IT IS THEREFORE ORDERED BY THE COURT** that the ELC Defendants' Motion to Dismiss (Doc. 51) for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is DENIED;

**IT IS FURTHER ORDERED** that Defendants Deb Pope and Katie Pope's Motion to Dismiss for failure to obtain service of process (Doc. 55) is GRANTED; Defendants are dismissed from this cause of action, without prejudice.

**IT IS SO ORDERED.**
Dated: May 23, 2012

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE